UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEORGE W. KELLY                                                          CIVIL ACTION

VERSUS                                                                         NO. 07-611

SHERIFF MARLIN GUSMAN, ET AL.                             SECTION:  "S"(1)

REPORT AND RECOMMENDATION

Plaintiff, George W. Kelly, a state inmate, filed this *pro se* and *in forma pauperis* complaint against Sheriff Marlin Gusman, Chief Rudy Belisle, Warden Bonita Pittman, Warden Holiday, Warden Johnson, and "all medical personnel" at the Orleans Parish Prison House of Detention and at the Lasalle Correctional Center.   In this lawsuit, plaintiff challenges the conditions of his confinement and the quality of his medical care.

A Spears hearing was held on March 22, 2007, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[1]  At that hearing, plaintiff was sworn and his testimony was recorded.  Based

---

[1] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

on his complaint and the <u>Spears</u> hearing testimony, the Court finds that plaintiff is making the following allegations in support of his claims.

In May 2006, plaintiff was incarcerated within the Orleans Parish Prison system (OPP) in overcrowded and unsanitary conditions.  He developed an eye infection and filled out a sick call request and administrative grievance; however, he was transferred to the Lasalle Correctional Center (LCC) before he was seen by the jail medical staff.  At LCC, he notified officials at that jail of his eye problem.  He was then seen by jail medical personnel who diagnosed plaintiff's condition as "pink eye."  After a nurse treated plaintiff for that condition by giving him medication which had previously been used by another inmate, plaintiff had an adverse reaction and his condition worsened.  After approximately a week, he was taken to the LSU Medical Center in Monroe where he was treated on several occasions for the problem.  After approximately one month of treatment, he was transferred back to OPP.  He alleges that upon his return to OPP he was again denied adequate medical care for his condition.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint[2] and fully considering his Spears hearing testimony, the Court finds that plaintiff's complaint should be dismissed as frivolous.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Plaintiff first complains that he endured overcrowded and unsanitary conditions when initially incarcerated at OPP in May 2006.  When a pretrial detainee[3] challenges the conditions of his confinement, his claims are analyzed under the Fourteenth Amendment.  With respect to such claims, the United States Fifth Circuit Court of Appeals has held:

> In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court evaluated the constitutionality of conditions of confinement of pretrial detainees.  Because they have not yet been convicted of the crime with which they have been charged, pretrial detainees have a due process right not to be punished for that crime.  The Supreme Court has stated that the distinction between conditions that may be imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:
>
>> [T]he State does not acquire power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.
>
> Ingraham v. Wright, 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-14 n. 40, 51 L.Ed.2d 711 (1977).  Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment.  Bell, 441 U.S. at 538, 99 S.Ct. at 1873.  Courts may find a punitive purpose upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for a crime with which the detainee has been charged but not yet convicted.  Id. at 538, 99 S.Ct. at 1873-74.  In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective.  Id. at 539, 99 S.Ct. at 1874.

Hamilton v. Lyons, 74 F.3d 99, 104 (5th Cir. 1996) (footnotes omitted).

---

[3] The events about which plaintiff complains occurred while he was a pretrial detainee.  In the supplement he recently filed in this Court, he indicates that he has since been convicted of a drug offense and is awaiting sentencing.  See Rec. Doc. 11.

4

In this case, plaintiff complains that during his detention in May 2006 he was confined along with approximately sixteen other inmates in unsanitary conditions in a cell intended to hold only ten prisoners.  The mere fact that plaintiff was confined in an overcrowded cell does not in and of itself amount to a constitutional deprivation.  See, e.g., Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.").  Further, petitioner's contention that the overcrowding led to unsanitary conditions does not necessarily transform his allegations into an actionable claim.  Admittedly, there is a point beyond which a prison cell's conditions are so filthy and unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  However, the types of conditions about which plaintiff complains, e.g., dirty blankets and an in-cell toilet near areas used for eating and sleeping, fall well short of that point.  Simply because a cell is unpleasant or less sanitary than one would wish for his home does not render the conditions unconstitutional.  See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.")  Moreover, when conditions of confinement are at issue, the length of time spent in the challenged conditions should be taken into account.  Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hines v. Cain, Civ. Action No. 06-3772, 2007 WL 891875, at *7 (E.D. La. Mar. 20, 2007).  Here, plaintiff's exposure to the conditions was brief, in that he was confined in the cell for no more than twelve days before being

transferred to LCC.[4]  Lastly, and most importantly, plaintiff has no evidence that the conditions stemmed from a punitive motive or even any basis from which this Court could *infer* such a motive. For all of the foregoing reasons, the Court finds plaintiff's challenge to the conditions of his confinement to be frivolous.

The Court likewise finds plaintiff's medical claims to be frivolous.  It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.  And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

---

[4]  The jail records reflect that plaintiff entered OPP on May 14, 2006, and was transferred to LCC on May 26, 2006.  Rec. Doc. 11.

To the extent that plaintiff is complaining that he received inadequate medical care when he first incarcerated at OPP in May 2006, that claim is clearly frivolous.  Considering that (1) his condition did not develop until *after* he entered the facility,[5] (2) his condition was not made known to jail officials until sometime thereafter when he submitted a sick call request and grievance,[6] and (3) he was at OPP only a *total* of twelve days on that occasion,[7] there simply was not time to treat plaintiff's condition prior to his transfer.  Moreover, at best, plaintiff suffered only a delay in treatment; however, a simple delay in receiving medical care amounts to a constitutional violation only if there has been *deliberate indifference* which results in *substantial harm*.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  In the instant case, when plaintiff submitted the sick call request, that request was not ignored.  Rather, he received a response saying he would be examined in the medical department, but he was transferred before that could occur.  From those facts, there is simply no evidence which could support a finding of deliberate indifference.  Further, in any event, there is no evidence that the brief delay of treatment resulted in substantial harm to plaintiff.

Plaintiff's claim regarding his medical care at LCC is likewise frivolous.  Again, there is simply no evidence of deliberate indifference.  When he complained to officials regarding his eye

---

[5] In his complaint, plaintiff states that his eye problems began on or about May 24, 2006.  Rec. Doc. 6.

[6] In his complaint, plaintiff states that he submitted the sick call request on or about May 26, 2006.  Rec. Doc. 6.

[7] As previously noted, the jail records reflect that plaintiff entered OPP on May 14, 2006, and was transferred to LCC on May 26, 2006.  Rec. Doc. 11.

7

problem, he was examined by the medical staff and treated.  When that treatment proved unsuccessful, he was sent to the LSU Medical Center several times for evaluation and treatment by specialists.  The only valid complaint he may have regarding his treatment at LCC relates to the fact that he was originally misdiagnosed with "pink eye" and treated for that condition.  However, at best, that would constitute only malpractice.  "It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action." Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Simply put, allegations of malpractice or negligence alone are never sufficient to state a claim for constitutionally inadequate medical care.  Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

It is also evident from plaintiff's medical records[8] that his medical needs were not met with deliberate indifference after his return to OPP on July 31, 2006.  Those records reflect that plaintiff did not complain of his eye problem either upon his initial return to OPP or when he was seen by a jail physician for a routine physical and health assessment on September 21, 2006.  Rather, his first complaint regarding that condition was a sick call request, submitted on September 29, 2006, stating that his eye was swollen.  That complaint was received and assessed by a jail nurse on October 3, 2006, and plaintiff was referred to a jail physician.  He was seen by the physician on October 6, 2006, and it was determined that plaintiff possibly had a herpes-related eye infection.  Plaintiff was immediately placed on medication to treat his symptoms, and his medical records were requested from LCC.  Those records were received approximately one week later and confirmed the diagnosis of the herpes-related eye infection.  He was then placed on an antiviral medication for three months

---

[8] Those records have been filed into this federal record as Rec. Doc. 10.

to treat that infection and an outside appointment with the hospital ophthalmology department was requested; however, the hospital failed to schedule that appointment.  Over the next several months, plaintiff was seen in the jail medical department numerous times on unrelated matters and had no complaints concerning his eye on any of those occasions.  However, on March 23, 2007, he submitted another sick call request regarding his eye problem and was seen by a physician that same day.  He was again placed on antiviral medication and an appointment with the hospital ophthalmology department was again requested.

Based on those records, it is evident that plaintiff's condition was not ignored by the OPP medical staff.  To the contrary, he was seen within days of voicing complaints, his symptoms were treated, his medical records were ordered, he was given antiviral medication when his diagnosis was confirmed, and additional treatment was requested from an outside source.  Based on those medical records, it is clear that plaintiff's medical needs were not met with deliberate indifference.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

It is obvious that plaintiff was frustrated by what he perceived to be a lack of quality vision care at OPP.  However, a disagreement between an inmate and the medical staff concerning whether certain medical treatment was appropriate generally is not actionable absent exceptional circumstances.  Id.  Additionally, to the extent that plaintiff is simply arguing that he was not given the best medical care available, that is not the constitutional standard.  See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could

buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available).  Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs.  Deliberate indifference simply cannot be inferred from the facts alleged or the medical records in evidence.  Moreover, the fact that his condition has not been cured does not make his treatment unconstitutional.  Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) ("Unsuccessful medical treatment does not give rise to a § 1983 cause of action.").

Out of an abundance of caution, the Court notes that its conclusion is unchanged even if plaintiff's recently filed supplement[9] is considered.  In that supplement, he alleges that he was taken to see an eye specialist at the St. Thomas Medical Center on April 22, 2007, to get an examination for eyeglasses.  When he was not taken back to pick up the eyeglasses, he filed a grievance on May 7, 2007.  Again, that grievance was not ignored; rather, plaintiff was informed that jail officials had tried to contact the medical center regarding the matter "on several occasions without any success." The officials indicated that they would continue their attempts and suggested that plaintiff might also wish to have his family members attempt to contact the medical center on the matter.  Clearly, officials have tried to resolve plaintiff's, and the fact that their efforts have to this point proven unsuccessful is in no way indicative of deliberative indifference.

Plaintiff additionally alleges in the supplement that a doctor at the St. Thomas Medical Center stated that the eye drops plaintiff used should have been discontinued.  Plaintiff further

---

[9] Rec. Doc. 11.

alleges that on May 30, 2007, a news report indicated that the eye drops were found to be dangerous. Even if those allegations proved to be true, the prescribing and continued use of the would not amount to a constitutional violation.  Rather, at most, the claims would again be ones of nothing more than negligence or malpractice and, therefore, not cognizable in this federal proceeding.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventh day of June, 2007.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**